NOT PRECEDENTIAL

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CURT ALLISON**<br><br>　　　　**Plaintiff,**<br><br>　　v.<br><br>**NEW JERSEY TRANSIT CORPORATION,** *et al.*,<br><br>　　　　**Defendants.** | Civ. No. 2:12-02493 (WJM)<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

　　Plaintiff Curt Allison brings this action against New Jersey Transit Corporation, Marco Costa, and David DeGennaro (collectively "Defendants"), alleging various state and federal statutory, constitutional and common law claims. This matter comes before the Court on Defendants' motion for summary judgment under Federal Rule of Civil Procedure 56. There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, Defendants' motion for summary judgment is **GRANTED**.

**I.　BACKGROUND**

　　The following facts are undisputed.[1] Plaintiff is an African-American male who is Muslim. At all relevant times, Plaintiff has been an employee of Defendant New Jersey Transit Corporation ("NJT"). (Statement of Material Facts ("SOMF") at ¶ 1). Defendant NJT is a public entity corporation, chartered by the State of New Jersey, to provide public transportation. (Compl. at ¶ 2). At all relevant times, Defendants Marco Costa and David DeGennaro were employees of NJT. (Compl. at ¶¶ 7,9; SOMF at ¶¶ 3,6).

---

[1] Plaintiff failed to respond to Defendants' Statement of Material Facts, even though he was required to do so under Local Rules. *See* N.J. L. Civ. R. 56.1(a) ("The opponent of summary judgment shall furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement…"). Thus, to the extent that the assertions in Defendants' Statement of Material Facts are properly supported, the Court will deem them uncontroverted. *See, e.g., Malik v. Hannah,* 799 F. Supp. 3d 355, 356 (D.N.J. 2011)

1

The 2009 Incident and Disciplinary Proceedings

In a 2009 internal meeting, NJT banned employees from engaging in horseplay, which included the exchange of insults. *Id*. at 2. On April 21, 2009, Costa submitted a written statement to NJT management that accused Plaintiff of insulting him while working on an NJT rail car. (SOMF at ¶¶ 3-5). Specifically, Costa alleged that Plaintiff called him a "bitch" as Costa was about to leave the car. (*Id*. at ¶ 5). DeGennaro also submitted a written statement corroborating Costa's allegations. (*Id.* at ¶ 7). Additionally, NJT employees who witnessed the alleged incident submitted written statements. *Id*. at ¶ 8. Plaintiff submitted a written statement that diverged from Costa's version of the story. *Id*. at ¶ 9. In that statement, Plaintiff alleged that he merely repeated the name "bitch boy" after it was already directed at an NJT foreman. Plaintiff further alleged that Costa became angry and began to walk away, to which Plaintiff replied "if you can't handle the heat of a conversation that wasn't aimed at you[,] stay out of the kitchen." *Id*.

On May 7, 2009, NJT issued a notice to Plaintiff related to the April 21, 2009 incident. The notice informed Plaintiff that he was charged with violating NJT rules by creating a hostile work environment. (Def's Motion, Ex. K). Pursuant to Plaintiff's union contract, proceedings were held from July 14, 2009 through April 27, 2011 to determine whether Plaintiff committed the alleged offense. (SOMF at ¶ 13). Shortly after the proceedings concluded, NJT sent Plaintiff a notice of discipline indicating that Plaintiff would receive a ten-day deferred suspension for creating a hostile work environment on April 21, 2009. (Def's Motion, Ex. L).

Plaintiff has testified that he and DeGennaro were friendly prior to the April 2009 incident and that he has no reason to believe that Costa and DeGennaro resented him because of his race. (Allison Dep., 32.3-10). He has also testified that he has no reason to believe that Costa and DeGennaro knew that he was a Muslim. (Allison Dep., 32.11-18).

The 2010 Incident and Disciplinary Proceedings

Plaintiff was also disciplined for an incident that occurred in 2010. On September 19, 2010, Plaintiff found racial and religious epithets displayed in graffiti on the bathroom walls. (SOMF at ¶ 38). He also found a "bad air sponge" on which someone wrote anti-African American epithets. (*Id*.) Plaintiff reported his finding to union president James Thomas, who subsequently relayed the information to the facility manager, Tim Leiner. (SOMF at ¶¶ 39-40). Upon hearing about the sponge, Leiner approached Plaintiff to investigate. Leiner claims that he took a photo of the sponge, placed the sponge in the garbage, and sent the photo to the Equal Employment Opportunity (EEO) Office. (SOMF at ¶ 43). Plaintiff has acknowledged that he did not report the sponge to the EEO Office because he knew it had already been reported. (Allison Dep. II, 9.12-20).

Unhappy with Leiner's response to the situation, Plaintiff contacted James Thomas, who instructed Plaintiff to keep the sponge in his locker and raise the issue at the next day's safety meeting. (SOMF at ¶¶ 45-46). Safety meetings were held each morning to discuss safety issues and work assignments. (SOMF at ¶ 49). The day after finding the sponge,

Plaintiff was assigned to the Track 2 safety meeting. (SOMF at ¶ 50). After attending the Track 2 safety meeting, Plaintiff entered the Track 1 safety meeting while in possession of the sponge and asked foreman Frank Pionegro to address the sponge issue. Having already announced that employees are not allowed to vandalize NJT property or equipment, Pionegro refused Plaintiff's request. (SOMF at ¶¶ 51-57). After Pionegro refused, Plaintiff displayed the sponge to workers on Track 1 and recited the racial epithets written in graffiti. According to Pionegro, Plaintiff used profanity while reciting the racial epithets written on the sponge while exclaiming "see what they do here?" (Def's Motion, Ex. Q). Pionegro's recollection is consistent with a written statement from Plaintiff's supervisor – Gerard Curcio – who observed that Plaintiff was trying to "insight [sic] his co-workers by the tone of his voice and his gestures." (Def's Motion, Ex. P). Other witnesses similarly observed Plaintiff vocalizing racial epithets. (See Def's Motion, Exs. O, M, R). Plaintiff has also conceded that he likely displayed the sponge at the safety meeting. (Allison Dep., 77.13-17).

Proceedings related to the 2010 incident were held in 2011 and 2012. (SOMF at ¶ 66). After the proceedings concluded, NJT informed Plaintiff that he was receiving a five-day deferred suspension for creating an uncomfortable work environment on September 20, 2010. (Def's Motion, Ex. S).

<u>Past NJT Actions</u>

Plaintiff has also been involved in other lawsuits against NJT. In 2008, Plaintiff filed a lawsuit against NJT for discrimination, captioned *Allison v. New Jersey Transit Corp*. 08-cv-3150 (WJM-MF). While that case settled in 2009, Plaintiff subsequently participated in a separate state court action against NJT, captioned *Carcano v. New Jersey Transit Corp*., No. L-9846-08. (Compl. at ¶¶ 18-20). Many of the individuals involved in the disciplinary action taken against Plaintiff were unaware of those lawsuits during the relevant period. (SOMF at ¶ 90).

<u>2011 Leave</u>

Pursuant to the Family Medical Leave Act, NJT granted Plaintiff four vacation days and seven unexcused days to coincide with the birth of his child. (SOMF at ¶ 91). On September 30, 2011, Plaintiff informed George Semple, who was the assistant manager of the NJT Service and Inspection facility, that he would take an additional five days off from work. (Semple Cert. at ¶ 6). Semple informed Plaintiff that taking that much time off would require Plaintiff to report to the NJT Medical Department ("Medical") before reporting to work. (*Id.*) After taking additional time off, Plaintiff attempted to report for work on a Sunday without first reporting to Medical. (*Id.*) Because Medical was closed that day, Plaintiff was unable to return to work. (*Id.*) Plaintiff then missed an additional three days of work because he did not report to Medical until the next Tuesday. (*Id.*)

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides for summary judgment "if the pleadings, the discovery [including, depositions, answers to interrogatories, and

admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court considers all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. *Id.* The opposing party must do more than just rest upon mere allegations, general denials, or vague statements. *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). Rather, to withstand a proper motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. *Anderson*, 477 U.S. at 256–57.

### III. DISCUSSION

Plaintiff alleges seven counts in his Complaint, including discrimination (Counts One and Three) and retaliation (Counts Two and Four) in violation of the New Jersey Law Against Discrimination and the United States Constitution. The Complaint asserts causes of action against the NJT under the Family and Medical Leave Act (FMLA) and the New Jersey Family Leave Act (NJFLA) (Count 5). Plaintiff has also alleged a breach of contract claim against the NJT (Count 6) and a defamation claim against Costa and DeGennaro (Count 7). The Court will grant summary judgment to Defendants on each of Plaintiff's claims.

#### A. Discrimination (Counts 1 and 3)

Counts 1 and 3 allege that NJT impermissibly discriminated against Plaintiff on the basis of his race, sex, and religion in violation of 42 U.S.C. § 1983 and the NJLAD. (Compl. at ¶¶ 66-69; 74-77). In order to bring a successful equal protection claim under § 1983, a plaintiff must show that he was subjected to purposeful discrimination because he was a member of a protected class. *Andrews v. City of Philadelphia*, 895 F.3d 1469, 1470 (3d Cir. 1990). The plaintiff must also show that he received disparate treatment from that received by others similarly situated. *Id.* The NJLAD imposes similar requirements. *See Bradley v. United States,* 299 F.3d 197, 205 (3d Cir. 2002); *Rojas v. City of New Brunswick,* Civ. No. 04-3195, 2008 2355535 at *26 (D.N.J. June 4, 2008).

Moreover, the burden shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801–803 (1973) applies to § 1983 and NJLAD claims. *See Bergen Commercial Bank v. Sisler*, 157 N.J. 188 (1999); *Stewart v. Rutgers,* 120 F.3d 426, 432 (3d Cir. 1997). Under *McDonnell Douglas*, the plaintiff must establish a *prima facie* case of

4

discrimination. 411 U.S. at 802. Establishing a prima facie case of discrimination will create the presumption that the employer unlawfully discriminated against the employee. *See* T*exas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 255 (1981). Once that occurs, the burden will shift to the employer to prove a nondiscriminatory reason for its actions. *McDonnell Douglas*, 411 U.S. at 802. If the employer meets that burden, the plaintiff then must prove that the employer's stated reason is merely a pretext for unlawful discrimination. *Id*. at 804. However, the plaintiff at all times bears the ultimate burden of persuasion. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 503 (1993).

### i. *Discrimination Based on Plaintiff's Religion*

Plaintiff alleges that he suffered discrimination on the basis of his religion when he was disciplined for the 2009 and 2010 Incidents. (Compl. at ¶ 34). As a Muslim, Plaintiff is a member of a protected class. *See, e.g., Saunders v. Apothaker, Assoc., Inc.,* No. 10–3170, 2012 WL 1332602 (D.N.J. Apr. 17, 2012). However, Plaintiff has failed to produce any evidence making a *prima facie* case of religious discrimination. In order to prove discrimination, a plaintiff must show that the alleged discriminators were aware of his or her protected status. *See Ambros v. Township of Robinson, Pa.,* 303 F.3d 488, 494 (3d. Cir. 2002). With respect to the 2009 Incident, Costa and DeGenarro filed the initial complaints against Plaintiff, which initiated the disciplinary proceedings. (SOMF at ¶¶ 3-6). However, both Costa and DeGennaro have submitting sworn declarations indicating that they were unaware that Plaintiff was a Muslim when they filed those complaints. (SOMF at ¶ 90). Other individuals who investigated, prosecuted, and adjudicated the proceedings arising out of the 2009 and 2010 Incidents have submitted similar declarations. (*Id*.) Because Plaintiff has not produced any evidence undermining those sworn declarations, no reasonable jury could find that Plaintiff suffered discrimination on account of his religion.

### ii. *Discrimination Based on Plaintiff's Race*

As an African-American, Plaintiff is a member of a protected class. *See, e.g., Wilcher v. Postmaster General*, 441 Fed.Appx. 879, 880 (3d Cir. 2011). However, Plaintiff has failed to make a *prima facie* showing of racial discrimination. When a plaintiff alleges race-based discrimination, he or she must tie the conduct complained of to his or her race. *Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358, 366 (3d Cir.2008). While Plaintiff asserts that he suffered an adverse employment decision when he received deferred suspensions following the 2009 and 2010 Incidents, he has not produced a scintilla of evidence demonstrating that he was unfairly treated compared to similarly situated employees who were not African American. *See Wilson v. Lockhaven Univ*., 474 Fed.Appx. 74, 76 (3d Cir. 2014).[2]

---

[2] Moreover, Plaintiff has produced no evidence showing that any of the other conduct complained of bore any relationship to his race whatsoever. For example, Plaintiff asserts that foreman Leamon McKenzie treated him unfairly. (Compl. at ¶ 36). However, Plaintiff has offered no evidence tying Mr. McKenzie's conduct to Plaintiff's race. To the contrary,

Even if Plaintiff did make a *prima facie* case of racial discrimination, NJT has submitted overwhelming evidence demonstrating that it had a legitimate, non-discriminatory reason for disciplining Plaintiff.  An employer's reasonable belief that a worker engaged in disruptive behavior can serve as a legitimate, non-discriminatory justification its employment decision. *See Neiderlander v. American Video Glass Co.,* 80 Fed.Appx. 256, 259 (3d Cir. 2003).  Once an employer provides a non-discriminatory justification for its actions, a plaintiff can only survive summary judgment by presenting "sufficient evidence to meaningfully throw into question, *i.e.*, to cast substantial doubt upon," the employer's proffered reason for its action. *Fuentes v.* Perskie, 32 F.3d 759, 765 (3d Cir. 1994).  With respect to the 2009 Incident, Plaintiff concedes that he used profanity and told Costa "if you can't stand the heat, stay out of the kitchen." (Def's Motion, Ex. J). Other NJT employees also submitted written reports to NJT indicating that Plaintiff would mock and intimidate Costa in the workplace.  (*See* Def's Motion, Exs. I and J).  It is therefore clear that NJT possessed a legitimate, non-discriminatory reason for disciplining Plaintiff in connection with the 2009 Incident.

With respect to the 2010 Incident, Plaintiff concedes that he likely displayed the bad air sponge to other NJT employees during a safety meeting. (*See* Allison Dep., 77.13-17). He took this action even though he knew that NJT management had already filed a report with the EEO. (SOMF at ¶ 44). Additionally, other NJT employees submitted written statements indicating that Plaintiff vocalized the racial epithets written on the sponge, which had a disruptive effect on the workplace environment. (*See* Def's Motion, Exs., N, P, Q). In his opposition, Plaintiff contends that NJT's asserted justification is not worthy of credence because some NJT employees submitted written statements that did not describe Defendant vocalizing the epithets on the sponge. (Plf's Opp. at 6). However, close inspection of the record reveals that those statements either did not touch upon the subject of whether Plaintiff vocalized the epithets, or were made by witnesses who were not present for the entire incident.  The Court therefore concludes that those statements are insufficient to defeat summary judgment. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (stating that once the moving party has properly supported its motion, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts").

### iii. *Discrimination Based on Plaintiff's Gender*

Plaintiff also appears to allege gender-based discrimination. (*See, e.g.,* Compl. at ¶ 62). Despite this conclusory assertion, Plaintiff has put forth no evidence of such discrimination.  Therefore, his claim cannot withstand summary judgment.  *See West v. Hudson County Correctional Center,* 231 Fed. Appx. 136, 139 (3d Cir. 2007).

---

the record shows that Mr. McKenzie has treated African-American employees no differently from their Caucasian counterparts.  (SOMF ¶¶ 79-80).

### B.     First Amendment and Retaliation Claims (Counts 1, 2, and 4)

As part of his § 1983 claims, Plaintiff alleges that NJT violated his free speech rights protected by the First Amendment.[3]  "A public employee's statement is protected activity when (1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have an adequate justification for treating the employee differently from any other member of the public as a result of the statement he made." *Gorum v. Sessmons,* 561 F.3d 179, 185 (3d Cir. 2009) (citing *Garcetti v. Ceballos,* 547 U.S. 410, 418 (2006).

#### i.  The 2009 Incident

The first disciplinary proceeding involved Plaintiff's use of profanity and other intimidating phrases in the presence of other NJT employees.  Such speech is not a matter of public concern, and therefore NJT did not violate Plaintiff's First Amendment rights when it disciplined him for the 2009 Incident.

#### ii. The 2010 Incident

The second disciplinary proceeding involved Plaintiff displaying the bad air sponge at an NJT safety meeting.  Even assuming that Plaintiff was speaking as a citizen on a matter of public concern, the Court finds that Plaintiff cannot show that his interest in displaying the sponge outweigh NJT's interest in "promoting efficiency of the public services it provides through its employees." *Azzaro v. County of Allegheny,* 110 F.3d 968, 980 (3d Cir. 1997).  NJT did not discipline Plaintiff for reporting the bad air sponge; instead, Plaintiff was disciplined only after he openly displayed the sponge at a safety meeting, which according to other NJT employees had a disruptive effect on the workplace.  Moreover, the record shows that safety meetings involve critical issues to the NJT's functioning, including potential safety hazards and workplace assignments.  (*See* Def's Motion, Ex. M).  Thus, NJT's interest in ensuring a safe and efficient workplace environment outweigh Plaintiff's interest in expressing his viewpoint by displaying the sponge at an NJT safety meeting.

#### iii. The Other NJT Actions

Plaintiff also alleges that NJT has disciplined him in retaliation for participating in other lawsuits against NJT. (Compl. at ¶¶ 71-81).  In addition to arguing that NJT's retaliation tactics impinged his First Amendment rights, thereby creating liability under § 1983, Plaintiff argues that such misconduct also violated Section 10:5-12(d) of the NJLAD. (*Id.* at 80)  Under both §1983 and the NJLAD, Plaintiff must show a causal link between his participation in the other NJT lawsuits and the discipline he faced.  *See Lauren W. ex*

---

[3] Plaintiff also appears to assert that NJT violated the free exercise clause of the First Amendment.  (Compl. at ¶ 68).  However, Plaintiff has failed to submit any allegations – let alone evidence – substantiating that claim.  *See, e.g., Jalil v. Avdel Corp.*, 873 F.2d 701, 707 (3d Cir. 1989) ("conclusory allegations…in the absence of particulars, are insufficient to defeat summary judgment")

*rel. Jean W. v. DeFlaminis,* 480 F.3d 259, 267 (3d Cir. 2007) (§ 1983); *Thomas v. Town of Hammonton*, 351 F.3d 108, 116 (3d Cir. 2003) (NJLAD).  In this case, the Court concludes that no reasonable jury would find a causal link between Plaintiff's participation in the other lawsuits and the discipline he faced at the hands of NJT.  The NJT employees who reported, investigated, and prosecuted the disciplinary proceedings against Plaintiff have submitted sworn declarations indicating that they were unaware of Plaintiff's involvement in the other NJT lawsuits during the relevant period.  (SOMF at ¶ 90).  Even after conducting discovery, Plaintiff cannot produce a morsel of evidence demonstrating that any of those individuals knew of the other lawsuits.  Instead, he vaguely asserts that the lawsuits "were well known around the shop floor." (Allison Cert. at 10).  Because a party resisting summary judgment cannot rely merely upon "bare assertions, conclusory allegations or suspicions to show the existence of a material issue," *McCabe v. Ernst & Young*, 494 F.3d 418, 436-37 (3d Cir. 2007), the Court will grant Defendants' motion on Plaintiff's First Amendment and NJLAD claims.

### C.  FMLA and NJFLA Claims (Count 5)

The Court will also grant Defendants' summary judgment motion on Plaintiff's FMLA and NJFLA claims.  In order to succeed on his FMLA and NJFLA claims, Plaintiff must show "(1) that he was entitled to benefits under the FMLA [and NJFLA] and (2) that his employer illegitimately prevented him from obtaining those benefits."  *Hayduk v. City of Johnstown,* 386 Fed.Appx. 55, 59 (3d Cir. 2010) (citing *Sarnowski v. Air Brook Limousine, Inc.*, 510 F.3d 398, 401 (3d Cir. 2007)); see also *Santosuosso v. NovaCare Rehabilitation*, 462 F.Supp.2d 590, 597 n. 4 (D.N.J. 2006) ("The elements of a claim under the NJFLA are similar to those under FMLA.")  The record in this case unequivocally demonstrates that NJT did not improperly withhold FMLA or NJFLA benefits.  NJT granted Plaintiff time off coinciding with the birth of Plaintiff's child pursuant to the FMLA. (Semple Cert. at 6).  Once Plaintiff requested additional time off, NJT explicitly informed Plaintiff that NJT policy required him to report to Medical before returning to work.  (*Id*.)  However, Plaintiff unsuccessfully attempted to return to work on a day that Medical was closed, and did not resume working until he reported to Medical three days later.  (*Id*.)  Requiring Plaintiff to comply with NJT policy had no adverse impact on Plaintiff's ability to recover benefits under the FMLA or NJFLA.  The Court will therefore grant Defendants' summary judgment motion as to Count 5.

### D.  Breach of Contract and Tort Claims (Counts 6 and 7)

Plaintiff alleges a defamation claim against Costa and DeGennaro and a breach of contract claim against NJT.  In his defamation claim, Plaintiff alleges that Costa and DeGennaro falsely accused him of unprofessional conduct at disciplinary hearings arising out of the 2009 Incident. (Compl. at ¶¶ 89-98)  In his breach of contract claim, Plaintiff alleges that NJT "has violated the terms of the contracts governing the parties…" (Compl. at ¶87)  NJT is a public entity under both the New Jersey Tort Claims Act ("the TCA") and the Contractual Liability Act ("the CLA").  *Muhammad v. New Jersey Transit*, 176 N.J. 185, 821 A.2d 1148 (2003); *Johnson v. New Jersey Transit Rail Operations, Inc.,* No. 87-

8

183, 1988 WL 24148 (D.N.J. Mar. 15, 1988).  Under both the the TCA and CLA, a plaintiff who wishes to sue NJT or one of its employees must first submit a notice of claim to NJT within 90 days of accrual of the claim.  N.J.S.A. 59:8–3, 8; 59:13-5.  These notice of claim requirements cannot be waived.  *See Rivera v. Gerner,* 89 N.J. 526, 532 (N.J. 1982).  Here, Plaintiff does not refute that he failed to comply with the notice requirements of the TCA or CLA and has not submitted any evidence indicating otherwise.  Consequently, Plaintiff's defamation and breach of contract claims cannot withstand summary judgment.

### E.  CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is **GRANTED** and the Complaint is **DISMISSED WITH PREJUDICE**.  An appropriate Order follows.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: November 19th, 2014**

9